KLEES, Judge.
Defendants-appellants, The Hartford Insurance Company and Peter Robin (d/b/a Robin Seafood Company), appeal the trial court’s award of worker’s compensation benefits to plaintiff-appellee, Claude Leonard. We affirm.
This case arises out of a 1985 accident in which plaintiff allegedly injured his neck and back while lifting sacks of oysters during his employment at Robin Seafood Company. Based on plaintiff’s complaints of pain and in office physical examinations, Dr. Lucas DiLeo diagnosed plaintiff’s condition as cervical lumbar syndrome or structural damage to the disk in the lower back.
In February 1986, plaintiff filed a claim with the Louisiana Department of Labor Office of Worker’s Compensation stating he was injured on June 1, 1985 while employed at Robin Seafood Company. Based on the information submitted, the Office of Worker’s Compensation denied plaintiff’s claim.
On May 1, 1986, plaintiff filed suit for worker’s compensation benefits, medical expenses related to his injury, penalties and attorneys fees for defendants’ arbitrary and capricious refusal to pay worker’s compensation benefits. After a trial on the merits, the trial court rendered judgment in favor of plaintiff, finding him to be temporarily and totally disabled and awarding him benefits in the amount of $267 per week from December 18, 1985 until his disability ceases. The trial court further ordered defendants to pay all medical expenses related to plaintiff’s injury but denied plaintiff’s request for penalties and attorneys fees. It is from this judgment that defendants appeal.
On appeal, defendants first argue that the trial court erred when it found that plaintiff was injured in a work related accident on December 18, 1985. -We disagree.
In his petition for worker’s compensation benefits, plaintiff avers that he first injured his back while employed at Robin Seafood on June 1, 1985 when moving a pallet jack loaded with oyster sacks. He further avers that he severely reinjured his back on December 17, 1985 at Robin Seafood as he loaded oyster sacks from a dock onto pallets.[1]
Defendants contend that plaintiff failed to report either incident to his employer and that the only evidence plaintiff offered to prove that the alleged accident occurred was his own testimony and that of his brother-in-law, Leroy Johnson, 'also an employee of Robin Seafood.
Plaintiff testified at trial that on June 1, 1985 he and another worker, June Bailey, were loading pallets of oyster sacks onto a truck when he slipped and fell on his buttocks. He stated he missed three or four days of work following the incident. Plaintiff then returned to work, and on July 6, 1985 he was fifed when he failed to timely deliver a shipment of shrimp. Plaintiff stated a month later he returned to Robin Seafood and asked Peter Robin, the owner, *199 for his job back. Mr. Robin granted plaintiffs request. Plaintiff worked for a few more weeks and in August took off from his job in order to have surgery to remove a fatty tumor from his back. He then went back to work in December 1985. On December 18, 1985, plaintiff claimed he and Leroy Johnson were loading sacks of oysters from the dock onto pallets when he lifted a sack which weighed between 60 and 75 pounds and hurt his back. He further stated that he went to the main office and told his boss, Chris Robin, that he hurt his back, who told him to go home. Tony Fernandez, a friend of the plaintiff and a shrimper for Robin Seafood, gave plaintiff a ride to his mother’s home about a mile and one-half away. Plaintiffs mother then called the St. Bernard Emergency Medical Unit for an ambulance. Because the ambulance was slow in arriving, a relative brought plaintiff to Violet to meet the ambulance which then took him to Charity Hospital in New Orleans. Plaintiff remained in the Charity Hospital emergency, room for over 13 hours with an IV in his arm. While at Charity, doctors performed a CT-scan and myelogram on plaintiff.
Leroy Johnson, plaintiffs brother-in-law, also testified on plaintiffs behalf. He testified that he witnessed plaintiff lifting the oyster sack on December 18, 1985 when plaintiff stopped, dropped the sack and fell back. Mr. Johnson stated that plaintiff told him he hurt his back. Mr. Johnson also stated that he recollected plaintiff injuring his back in June or July of 1985 while they were working together loading oysters. He further testified that he saw plaintiff leave with Tony Fernandez after he injured his back on December 18.
Tony Fernandez testified that although he did not see plaintiff hurt his back while lifting sacks, he saw him on the dock and noticed plaintiff walked funny. He stated plaintiff told him he hurt his back. Mr. Fernandez then offered and gave plaintiff a ride to his mother’s home.
The emergency medical technician who administered care to the plaintiff in the ambulance also testified at trial. William Follette stated that he filled out the medical form on plaintiff. Although he could not recollect whether or not plaintiff told him that he injured his back in an accident, he did testify that plaintiff told him that he was experiencing numbness in his face and in the left side of his body. Mr. Follette testified that he attended to the plaintiff during the ride from Violet to Charity Hospital.
Although plaintiff may have injured his back in June or July of 1985, we do not find there was enough evidence presented at trial to indicate that this injury occurred at Robin Seafood. However, we do find that the trial court did not err in finding that plaintiff was in a work related accident in December 1985. There is ample evidence before us which shows that plaintiff did injure his back while lifting sacks of oysters at Robin Seafood on December 18, 1985. The trial court’s finding is entitled to great weight and should not be disturbed unless it is clearly erroneous. Hookfin v. Schwegmann Bros., 398 So.2d 1218 (La.App, 4th Cir.1980).
The defendants also contend that the trial court erred in finding that plaintiff is temporarily totally disabled.
In proving a claim for temporary total disability, the plaintiff has the burden of establishing her claim to a legal certainity and by a reasonable preponderance of the evidence. Bailey v. Zurich American Insurance Company, 503 So.2d 611 (La. App. 4th Cir.1987). When claiming a total disability, whether permanent or temporary, the plaintiff must prove his inability to engage in any gainful occupation whether or not the same or similar to that in which he was customarily engaged when injured. Connelly v. Buck Kreihs Co., 463 So.2d 725 (La.App. 4th Cir.1985). In doing so, the plaintiff may rely on medical and lay testimony. Simpson v. Kresge Co., 389 So.2d 65 (La.1980).
The medical evidence presented by the plaintiff includes the deposition of Dr. Lucas DiLeo and the trial testimony of Drs. Milton Rosenkrantz and Raeborn Llewellyn.
*200 Unable to testify at trial, Dr. DiLeo was deposed and his testimony perpetuated for trial purposes. Dr. DiLeo, a general practitioner, testified that he first treated plaintiff for his back ailment on December 30, 1985. Although plaintiff failed to give him a history of his injury at that time, DiLeo stated that plaintiff complained of severe headaches on the left side of his head, pain in his lower back and left leg. He also noted that plaintiff walked with a limp and used a cane. Dr. DiLeo said he treated plaintiff for the same pains again on January 14, 1985 but that it was not until his visit on January 21, 1985 that plaintiff gave him a detailed history of his injury. According to Dr. DiLeo, plaintiff gave him the following history of his injury. Plaintiff told him that he injured his back lifting oyster sacks at Robin Seafood on June 1, 1985. Plaintiff went to Ochsner Clinic in July 1985 and saw a Dr. Dwyer. Plaintiff then went to the neurology department at Charity Hospital in August 1985. There Charity doctors performed a CT-scan, a myelogram and took an x-ray of his cervical and lumbar spine. The test showed that there was a fatty tumor on his spine and it was removed. Plaintiff was discharged and went back to work on December 18, 1985. Dr. DiLeo further testified that he next saw plaintiff on February 3, 1986. During this visit, plaintiff complained about soreness and pain in his entire spine area from the cervical region down through the lumbar spine. Dr. DiLeo opined that plaintiff had suffered structural damage to the disks in his lower back and that plaintiff suffered severe depression and anxiety due to this injury. He stated that at plaintiffs office visit on March 4, 1986, he suggested that plaintiff see a neurologist.
Dr. Rosenkrantz, an orthopedic surgeon, testified on behalf of plaintiff at trial. He treated plaintiff regularly for every two weeks from March 12, 1986 until the time of trial in September 1987. Dr. Rosen-krantz stated that when he first started treating plaintiff, plaintiff had severe swelling and tenderness in his neck and lower cervical spine, along with spasms in the lumbar region of the spine. He also observed marked restrictions in plaintiffs forward flexion of his back. Stating that plaintiff should undergo several diagnostic tests in order to determine the exact nature of the injury, Dr. Rosenkrantz opined that plaintiff suffered from cervical and lumbar disk syndrome. Dr. Rosenkrantz further stated that the accident plaintiff suffered at work in December 1985 was the major cause of his back problems even though he had had a cyst removed from the spine just a few months earlier. For treatment for plaintiffs injured back, Dr. Rosenkrantz prescribed flexiril, a muscle relaxer, along with percodan and vicodin, pain killers. He also suggested a cervical isometric exercise program to plaintiff and that plaintiff refrain from all types of manual labor including lifting, bending, squatting, turning and reaching. He also told plaintiff to refrain from walking for long periods of time. It was Dr. Rosenkrantz's opinion that plaintiff could not engage in any type of employment which entailed physical labor.
1 A neurological surgeon, Dr. Raeborn Llewellyn, examined plaintiff on February 26, 1985. Based on the physical examination which he performed on plaintiff, he found muscle spasm in the neck area and in the posterior cervical muscles. Dr. Llewellyn also concluded plaintiff was plagued by restricted neck and waist movement, particularly when he tried to bend forward. He testified that plaintiff also had trouble bearing weight on his heels and toes. Dr. Llewellyn also felt that further diagnostic tests such as a myelogram, CT-scan, EMG and X-rays were needed in order to determine the exact cause of plaintiffs pain, but stated that he believed plaintiff experienced lumbar herniated disk syndrome as the result of the accident in December 1985. Although the objective findings from the myelogram and CT-scan performed on plaintiff at Charity on December 18, 1985 were negative in the medical reports introduced into evidence, the testimony from the three doctors who treated plaintiff overwhelmingly demonstrates that plaintiff suffers a totally disabling back injury. On the basis of this testimony, we conclude the trial court was not clearly *201 wrong in finding that plaintiff had proved by a preponderance of the evidence that he is temporarily totally disabled.
Finally, the defendants assert that the trial court was clearly wrong when it concluded plaintiffs average weekly wage was $400.00.
Plaintiff testified at trial that he worked eight hours a day, approximately six days a week. He stated he was paid both by check and cash a base pay of $300.00, plus an extra $100.00 or more, per week. Plaintiff stated that he always made at least $300.00 each week and on some occassions made as much as $600.00 per week. Introduced into evidence were several check stubs from plaintiffs pay checks. Each stub represented one week’s wages. The stubs dated June 13 and June 21, 1985 showed plaintiff as earning $300.00 each of those weeks. The stubs dated October 5 and October 12 were in the amount of $600.00 each. Plaintiff also testified that he was frequently paid in cash but kept no written records of his cash payments. Defense witness Chris Robin testified that plaintiffs base pay was between $250.00 and $300.00 per week in addition to weekly bonuses. He also conceded that plaintiff could have conceivably made between $400.00 and $600.00 a week with his bonuses, even though work was seasonal.
Although the evidence before us presents a close call as to the average weekly pay of plaintiff, the trial court’s finding is entitled to great weight and should not be disturbed unless manifestly wrong. The evidence and testimony admitted at trial established a reasonable basis for the trial court’s conclusion that plaintiff averaged $400.00 per week at the time of his injury. Absent a showing that this conclusion is clearly erroneous, we will not disturb this finding.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. Plaintiffs petition states that he reinjured his back on December 17, 1985, yet the evidence in the record indicates the injury occurred on December 18, 1985.